and call our second case of today. Estate of Adriano Roman Jr v. City of Newark et al. Mr. Senegata and Antoine. Take your time, don't worry. Whenever you're ready. Good morning, may it please the court. Justin Senegata on behalf of the Estate of Adriano Roman, formerly Adriano Roman. With the court's permission, I would like to request two minutes for rebuttal. That's fine. Thank you, Your Honor. One of the principal issues in this appeal, and there are several issues, is whether a plaintiff under 40 U.S.C. 1983 must plead the specific acts of a group of police officers who were present at the scene of a search and who are alleged to have acted as a group. The district court held that the specific acts of the officers had to be alleged with specificity who was doing a search in one room, who was doing a search in another. And we think district court erred for several reasons. First and foremost, the historic purpose of 1983 was to address constitutional violations by groups of people acting as groups. Well, deal with the case law, okay? Do we not have case law that says if you want to plead constitutional violations and pull them in as a cause of action in 1983, it's not enough for you to say, and that group of people did it. You've got to say who did what. You've got to point to the behavior of a specific individual and explain in enough detail what happened so that the court can look at that person and say that person violated the Constitution. I think, Your Honor, on the case law, it depends on what kind of action we're talking about. I would agree that at certain stages of an investigation and prosecution, you do have to delineate who did what. But at the scene of a search, that question has not been specifically addressed. And at the scene of a search, you don't really know who's doing what to whom. You may have the benefit of transcripts, as you do here. But as the state court judge held the suppression hearing, he wasn't even able to tell who did what to whom. So I would agree that as you move down the line of the investigation and prosecution, if you continue to allege that certain people earlier down the line are still liable, you may have to say, well, this person testified at the grand jury, this person wrote a report. How could we fault the district court here for applying that case law and frame a rule that wouldn't undermine it completely? In other words, I read the second amended complaint and was looking to see if there was something where it says that Officer Mendez did X, burst into the apartment, or something. It's always all the officers plus John Doe's 1 through 20. In each of the allegations, it's that way. How would we frame a rule that was true to our case law and what we've been getting from the Supreme Court if we were to uphold the complaint here as to individuals? So the rule we would suggest, Your Honor, is that if you make a plausible statement that the group acted as a group, and admittedly, the original complaint didn't do a great job of that. The amended complaint tried a little harder to find the group as a group. But if you allege that the group acted as a group at the scene, then all you do is then interpose the pleading requirements on that group at the scene. I want to separate out at the scene from later on because I realize later on is a problem. But at the scene, it's very difficult for a plaintiff to plead who did what. Mr. Roman was allegedly face down, handcuffed. He allegedly was threatened and told to call someone to bring drugs or he and his girlfriend would be arrested. He doesn't know who that person is who's saying that to him. And even the transcript, which is lengthy of the suppression hearing, doesn't provide us that information. For instance, Officer Mendez says he didn't even go into Apartment 9. So if we were to allege that Officer Mendez went into Apartment 9, we would be going against the transcript. And there's a danger for a plaintiff in being too specific. I would not stand here and tell you that the complaint shouldn't have said a little bit more, but I think it's said enough. But there's a danger of being too specific. Let me switch gears on you, if my colleagues allow me, and ask you about the Minnell claim. There is, well, why didn't the DOJ report get appended to the complaint? Why wasn't that something, even when you had a shot at an amended complaint, why wasn't the DOJ report, which clearly the plaintiff thinks is important, right? It's all over in argument. Why wasn't it in the complaint? I can't answer that question, Your Honor. It's certainly frustrating to me, having done the appeal, to look at that and see that it's not referenced extensively in the complaint, if not appended. I can't tell you why it wasn't in the complaint. Certainly looking at the DOJ report, and that's Appendix Page 92, there's a specific example of the exact kind of search. Yeah, but we can't be, how can we be looking at that? On the whole? On the whole? No, Your Honor, it isn't that specific. We don't know what the arrest reports that are being referred to. What was the consent decree about, what race of punitive defendants? The consent decree was about, it was primarily concerned with stop-and-frisk practices, IA investigations, it was, I conceded, Did it identify a racial group? No, and for the record, Your Honor, we're not pursuing on appeal the racial claim. That is not something that was briefed. It's not something I'm arguing. And you want us to assume that stop-and-frisk is the same thing as searching an apartment? No, what I would like you to assume, Your Honor, is that at the two pages of the DOJ report that address plain view searches, and where the DOJ identifies that 46 out of 52 arrest reports that they identified contained conspicuously consistent language about officers happening upon a defendant and the defendant just throwing drugs in their direction, that that sounds eerily consistent as to what was alleged to have occurred with Mr. Roman. So, yes, we don't know if those arrest reports were about the street or a home, but we would ask you to assume that the plain view searches, that is the notice of the pattern in practice problem that Newark had. But can we look at that? Can we look at that in the DOJ report since the report is barely mentioned in the amended complaint? I think, Your Honor, that it was mentioned sufficiently that the court could have referred to the two articles that were referenced in the complaint, the articles that were referenced in the briefing, and seen in the articles a mention of a failure of IA investigations, a mention of unconstitutional searches, and that should be sufficient. But at 1236, we can't. It has to be brought in by a party. And you brought in, or the party that filed, brought in the article and the press release. And then the defendants brought in the consent decree. So that's an invitation possibly to bring in the DOJ report, but it wasn't. And our case law is pretty clear that at 1236, we can't consider it. I think, Your Honor, that sufficiently just referencing the DOJ report in conjunction with the consent decree should have been enough at the pleading stage for the notice. Maybe the most out of that is in referencing the DOJ report, you can only deal with a particular paragraph and what it is in that particular paragraph that references. But the DOJ report is very comprehensive. It's not in the record as for our consideration at this point in time. It could be maybe a summary judgment, but not now. My position is that it is somewhat in the record, Your Honor, that it is a public record, and that under Tel-Lev and this Court's precedent, certain public records can be referred to. It's unfortunate that I have to sit here and argue about a document that wasn't appended to the complaint. That's what I'm left to argue with. But I think that the press releases and the reference to IA investigations that were not happening, the reference to unconstitutional searches, certainly if we had simply, or the attorney below had simply taken out the two pages that I just referred to from the DOJ report, put them into the complaint, that would be sufficient for a pattern and practice pleading under 1983. It would be very consistent with two other cases, Nutter v. Philadelphia and Harris v. Philadelphia, where the same thing was done. Unfortunately, it was not done. We do think that referring to the press releases, which refer to statements by Newark, refer to the failure of IA investigations, should be sufficient at the pleading stage. All of that really is sort of reminiscent of that phrase in, I think, a Supreme Court opinion about judges not being pigs hunting for truffles, right? That is a problem in this case, Your Honor. I would concede that it is a problem. Let me change gears for a minute because I want to try to get my arms around about exactly what's live here. There was a lot of waiver argument made by Mr. Antwine in his brief, and I noted in your reply you really didn't address that. Are we to take those arguments as accepted that several of the arguments were waived? If so, what are we dealing with now? What we're dealing with now, Your Honor, in the focus of this appeal and the focus of any remanded case and complaint would be the Fourth Amendment violations. There would be a false imprisonment claim. There would be an illicit prosecution claim. Sergeant Joyce Hill, who is still in the caption, would not be pursued. Basically, what we are pursuing is the 1985 conspiracy claim still in the mix. No, Your Honor. I'm trying to simplify this, and I don't think that's necessary to the case. I'm sorry. The Fourth Amendment claim, the malicious prosecution, and what else? False imprisonment. False imprisonment. The Monell claim, and these claims would be both under 1983 and the New Jersey Civil Rights Act. I think that's really the heart of what we're arguing about on appeal. The rest is kind of a distraction. I don't think the conspiracy claims are necessary. I would say this, however, with respect to the amended complaint. There is a claim that's mislabeled as a conspiracy claim that says unlawful imprisonment. So to some extent, the false imprisonment claim, which Newark argues was not raised again on the amended complaint, was raised again. It was just raised in a not quite great way. So that claim, I would read that as false imprisonment and a repleting of the false imprisonment claim after it was originally dismissed by the district court. The false imprisonment claim and the malicious prosecution claim, they're pretty generic. I don't see anything that indicates that these are federal law claims. The actual pleading of those claims under the headers are generic, Your Honor. They're legalese, which you disregard in reviewing a motion to dismiss. That's true. But our argument on appeal is that at this early stage of the case, you can't separate the causation from the search from the false imprisonment. We have to look at how the complaint was pleaded. It certainly looks like they're pleaded as state law claims. What would give the district court judge a clue that the false imprisonment and the malicious prosecution claims are actually meant to be constitutional violation claims brought under 1983? The first thing that would give the district court a clue would be the pleading of 1983 and the Judicial Rights Act. People plead 1983 and then state law claims all the time. Why would the fact that they're both in the complaint tell the district court, oh, and I mean for all these state law claims to actually also be 1983 claims? This is not a trick question. What in the complaint, what in the language would clue Judge Wiginton in? We're really not pleading a state law claim here. We're pleading a federal law claim. What language can you point us to? There isn't anything in the complaint, Your Honor. If that's true, then isn't that game up on those? No, Your Honor, because when the briefer submits to the district court that those claims are 1983 claims, and that's what the brief said in opposition to the motion to dismiss, that should be sufficient to help. How can what you say in argument in a brief be what controls when what the court is looking at is the sufficiency of the pleading? I think we have to go back to category, Your Honor, and there's a give and take here with the district court essentially telling the attorney below what those claims were and the attorney below saying, no, those are 83 claims, and at the end of the day, the plaintiff should be permitted to be the master of his own complaint. Indeed, and there was an opportunity to replete, right? When they were repled, were they repled as 1983 claims? As I said, the false imprisonment claim is still in the amended complaint. It's not labeled well. I can see that, but it is still there. The malicious prosecution claim was removed, but our position is that when you submit a brief to the court and say the claims are pled under a certain statute, the plaintiff should get the benefit of the doubt. The error or the omission of the attorney really shouldn't be held against the plaintiff, and saying to the district court that that's our claim should be enough to stand on the dismissed complaint for purposes of appellate review. Mr. Santagata, would you go back briefly to the personal participation issue? The district court said you had to plead personal participation, right? Yes. Where was that raised? I see it was raised in the motion for reconsideration, but is that the only place it was raised? It was raised if you look at both, and it's odd to say this, but if you look at Newark's brief, there was an extensive recitation of who did what and when at the time of the search, and this is at supplemental appendix pages 13 to 16. Then in the opposition brief, followed by the attorney below, pages 47 to 52 of the supplemental appendix, there is a discussion of the participation of the group. The words joint and several liability do not appear in any brief prior to the motion for reconsideration, that's true, but we're using the concept of joint and several liability to conceptualize how to plead this. It was argued consistently that it was sufficient to allege the facts in the complaint as to the group, and the fact that the words joint and several liability were not used should not detract from the fact that the attorney below did argue that this group was pled as a group and that the scan allegations were sufficient at the pleading stage, especially with the judgment that the search was unconstitutional and lacked probable cause. That's a key thing that the district court didn't really take into consideration, which is one of the two elements of the 83 claim. One of them is you have to plead a constitutional violation, and here we have a state court adjudication that there was such a violation. Before you sit down, why don't you go first and I'll go last. Okay. Can you explain to us, assuming that we're not going to be looking at the DOJ report, what we've got is the news report, the press release, and consent decree. What is it about those documents, and the consent decree in particular, that would allow us to say, you know what, there's enough here, there's enough information here, to make this more than a conclusory assertion about the municipality, about the city's failure to train or failure to supervise? Actually, I can just add on to that because his question is essentially the same as mine. Does the consent decree, which we can consider, describe specific customs or policies? Let me answer your honest question first. You know what, if you answer that, you've answered mine, so go ahead. I take that friendly amendment. The consent decree does not specifically describe customs and practices. What it does in the negative is implement procedures and protections to address what the DOJ identified as problems arising as far back as 2009 because we know when the DOJ did the investigation, they went as far back as 2009. So to that extent, the consent decree, when read in the negative, does give some plausible evidence, at least at the pleading stage, that Newark had notice as far back as 2011 when the DOJ started the investigation. That's an inferential leap you're acknowledging. You've got to read the consent decree, and then you have to infer from the fact that it's telling the city, you've got to do the following things, that it wasn't doing those things before, and that amounts to custom and practice. Am I understanding your line of argument correctly? Yes, Your Honor. I wouldn't call it a leap, and the reason I wouldn't call it a leap, but I would call it a fair inference, is because the authority for the DOJ to implement the investigation and the consent decree under 42 U.S.C. 12601 is identical to the language of pattern and practice liability. So if a consent decree is entered, it means that the DOJ has found, retrospectively, a pattern and practice. The DOJ can't even investigate until it makes a plausible showing of a pattern and practice. So I would say that that's a purely legal issue, that if you get a consent decree against the city, it means that there was a pattern and practice that had to be remedied. And when you read into the consent decree what had to be remedied, you can fairly infer, which is said more in the complaint, but you can fairly infer what the problems were. Okay. Thank you. Would you back me up, Mr. Antoine? Good morning, panel. I'm here to use the court. My name is Wilson Antoine. I am Assistant Corporation Counsel with the City of Newark, representing the City of Newark, the Newark Police Department, as it's incorrectly pleaded, former Chief of Police Anthony Campos, Officer Roger Mendez, Officer Albano Ferreira, Officer Anethric Abizas, Officer Joseph Cueto, Officer Miguel Rizal-Escal, Officer William Gope, and Retired Sergeant Joyce Hill. Why don't we start where we left off with Mr. Santagata. You said that the DOJ can't investigate until there is a pattern or practice that appears to be significant to cause them to want to come in. Your Honor, I respectfully submit that that's incorrect. The purpose of the investigation would be to establish whether there's a pattern and practice. The fact that there was no order in the complaint that was instituted thereafter means there was no definitive legal conclusion on whether there's a pattern and practice. The consent decree, I realize we can't deal with the DOJ report, but the consent decree at the very beginning says that the DOJ believes, based on what it investigated, that there was a pattern or practice of constitutional violations, and then goes through for 70-some pages of all the various things that need to be done to rectify that. There's training on the basics of, in one case, what does the Fourth Amendment require, three hours of training per year for another area, and as Mr. Santagata says, why isn't that an inference that the DOJ alleged that there was a pattern or practice, and they go 70-some pages of all the things that are going to be done to deal with that, even though the City of Newark denies that there was a custom in place here, which is basically what a pattern or practice is. For several reasons, Your Honor, probably the first of which, as stated before, is that the matter would have been waived because it wasn't specifically brought up before the court. More importantly, substantively speaking, I would respectfully disagree with the appellant's counsel that it doesn't address the reasons for the institution, the consent decree. Putting a monitor in tells you right then that there was a significant degree of distrust that there would be implementing of these various procedures, these myriad procedures, these myriad training procedures. But none of them related to the type of constitutional violation that was alleged in this case, and that was one of the main ones. Now, Lawful Search and Seizure? Yeah, it's page 13. Your Honor, Search and Seizure of a home with respect to misrepresentation of the circumstances of the search, with respect to the consent decree, and it's also supplemented by the press releases, all implications, all indications was that the purpose of this investigation, what they found to be at fault, was the fact that the Terry stops in investigations of cars, vehicles, and similar situations, what was found to be problematic. Well, no, the consent decree is pretty specific. It doesn't just say Terry stops. That's the first thing on page 13, investigatory stops and detentions. But then there's section D right after it, which is searches, and it talks about ordinary searches and concerns about searches. So the question Judge Ambo put to you stands, why is at the pleading stage, and we're not saying anything about liability right here, just whether this complaint survives and gets discovery, at the pleading stage, why isn't it enough to raise the Monell claim past the conclusory level to plausible that there's a DOJ investigation, that it's reported in the news, that the DOJ issues a press release saying there's been widespread problems in the department, and then there's a consent decree that's appended to the complaint. Why isn't that enough to get this past dismissal and into discovery? Your Honor, again, and I just want to clarify the point. As I believe Your Honor pointed out before, it does refer broadly to searches and the like. But in terms of the searches and arrests, among other things. Right, and the specification of those searches and arrests, as reflected earlier in this consent decree, as reflected in the police reports, again, do not overlap with the circumstances and type of constitutional violations that are alleged. You're not asserting that for the complaint to survive, they would have had to have appended something that was precisely on all fours with what happened here, are you? I'm saying that it has to be the same general category. I'm saying that if we're going to say about the category of any type of search, no matter what the circumstance of the category, I would submit that that's too broad. I just want to make sure I understand what's going on here. Are we talking about the hypothetical, if the consent decree had been appended to the complaint? The consent decree was appended by the defendants. But the DOJ report was not. The DOJ report was not. The report wasn't. Yes, correct. Okay. So specifically now, I'm just dealing with the consent decree. Okay, fine. And that's what Judge Jordan was quoting from, page 13 of the consent decree. Okay. Right. So stick with me here. Of course, the consent decree isn't in there by itself. The transcripts from the suppression hearing are appended as well. Correct. And the state court judge finds, in effect, doesn't use these words, but that the police are lying. I mean, the judge says, I have two opposite versions here, and I find the police version incredible. Incredible, I think, is the word that was used. So if you take those in conjunction with one another, the consent decree, which does reference searches and arrests, and the transcript where the state court judge says, I just think, and I acknowledge, again, I'm putting words in that judge's mouth, but that the police story that they came in and swore to under oath was not believable. Why doesn't that get you to, okay, there's enough smoke here that there may be a fire. We're going to let this get to discovery. I'll select because you're comparing apples and oranges. And so I think the disconnect is what exactly was wrong here that violated his constitutional rights. And what was wrong, or what plaintiff alleges was wrong, was that these officers ultimately lied about what happened and used the witness to force their way into the apartment of the plaintiff. It was an unconstitutional search and arrest is what the court came down with, right? Well, the search was unconstitutional. Specifically, the court found at the state criminal level that the circumstances under which they discovered the contraband was illegal, but they did find that, A, it was the plaintiff's apartment, and B, that there was contraband there, and they simply found that the manner in which they initiated the search was unlawful. This occurred during the period of investigation, right? The report came out in July of 2014. Right, but the incident that's complained of occurred in May 2014. So it was within the time. So it was during the time that they were investigating, which also consequently implicates notice issues, because then if the report itself is interpreted to be notice of something done wrong, and it's issued after this investigation, then certainly it makes the consent decree insufficient. The complaint is saying that there was a custom of constitutional violations similar to this one, there was a lack of training, and there was a lack of internal discipline. And with regard to the training, it puts in an article that the head of the union, this union, said, glad to see that there's a monitor coming in because this could be a pivot to something good because this person in 2014 had not had any training at all since he first became a police officer in 1995. And with regard to the internal affairs, only one out of 262 complaints was shown to have been valid, according to internal affairs. Is that from the report or from the consent decree? Well, the consent decree has a number in there, but the complaint says, I think it was either the press release or the newspaper article said that the internal affairs vary incredibly rare, the number of valid complaints that were deemed to be registered. And so doesn't this show that there's a problem with it so much so that what you have is the government doing an investigation through the U.S. Attorney, Mr. Fishman, and then the government entering into a consent decree with 70-some pages of remediation that has to be done with it to be monitored by a person because, in effect, no one else is trusted to implement it? Sorry, I'm trying to digest that question. But what do you mean? Doesn't that show a pattern or practice? Respectfully, no, Your Honor. What else? Tell me what would need to be shown. What would need to be shown to indicate a practice? What would tell you that there's a pattern or practice here? Your Honor, to be specific, in plaintiffs' Now, what would tell you, forget with the plaintiffs, what would tell you that this crosses the goal line in order to be a pattern or practice, that something has to be done? Specifically in this situation, I note that if you would combine what was in the consent decree with what had been in the justice report in terms of the type of searches that they said were an issue, why they're an issue, I respectfully submit that even if you included the justice report, there are other issues with the justice report that would have disqualified it. I can go into that, Your Honor, as well. If the type of solicitation providing the justice report was inside the consent decree with what's in there already, then I would have submitted that would have indicated a pattern of practice. So that indicates that maybe we ought to let this go to summary judgment and let the court figure that out. I would disagree, Your Honor, for several reasons. The first reason is that if you did look at the justice report, although I might suggest that there was an issue, it also states that the city had no notice of the issue. And that's one of the essential elements that we part acquaintance claim. I can go into that in more specificity if you want. But the additional two things I think are important. Where was the report pleaded? I'm sorry, Your Honor? Where was the report pleaded? Where was the report pleaded? The justice report? Yeah. It was not pleaded. Okay. And so I respectfully submit. So why are we – I mean, are we on 12B's review or not? We are on 12B's review, Your Honor. So if I could just clarify, Judge Ambrose has suggested that perhaps this is a matter that should go back to summary judgment because of an issue in the justice report that wasn't submitted before the court. So I submit, just as Your Honor is pointing out, that's not a reason to turn this back because it wasn't submitted on the motion to dismiss. So take the DOJ report out of it and look at what was appended. There's the consent decree, there are the transcripts, there's the press release, and there's the news report. If – let's look at the transcript again for a moment. We're supposed to be drawing all inferences in favor of the plaintiff. If the state court judge, after hearing from the officers and hearing from the alleged victim and other witnesses, draws the conclusion that the plaintiff's version is the truthful, believable one, the police version is the untruthful and unbelievable one, is it or is it not a fair inference from accepting the plaintiff's version that an unconstitutional search, in fact, did occur? To address that question, Your Honor, but as I said, I'm getting low on time. I just wanted to address – You're free to answer that question. Yeah, we're on our time. Don't worry about it. I just wanted to address two situations I think that have to also be considered. A, which is that the court did not consider those documents. I think the court had the discretion not to consider them. So it's a different argument when they're considered versus when they're not considered. That being said, considering the documents for purposes of your question, I think additional considerations jump in from the transcript that make it dispositive. That may be true, but I'm trying to get you to agree or disagree with me about an inference. Is it or is it not a fair inference from the state court judge's conclusion that the plaintiff was to be believed and the police officers not believed that in fact what happened in that apartment was an unlawful search, that if the plaintiff's version is the one you accept is true, something happened outside the Constitution? Yes and no, Your Honor. Yes, because from a criminal perspective, naturally there would have been a conclusive finding that there was an unlawful, unconstitutional search under the poisonous fruit of the tree doctrine. However, what I was about to state was with respect to a civil litigation claim under Section 1983, because the judge also found that the drugs actually in the constructed possession or within the apartment of the plaintiff, that they would not have a basis to assert a claim arising from that search in a civil context. I'm not sure I follow that or understand that. If it's given based on the Superior Court judge's finding that there was a constitutional violation, then I would have thought that the fact that he's a bad actor is irrelevant. The question isn't whether he's a bad actor or somebody else in the apartment is a bad actor. The question is whether the officers are bad actors and whether the city is responsible for it, right? Again, yes and no, Your Honor. Basically, we're dealing here with the Fourth Amendment violation of search and seizure. With respect to that, it has been held that there is no right to privacy in contraband and criminal conduct. That's always true, but that doesn't mean that the police are allowed to bust into your apartment and claim you were throwing drugs on the ground when you weren't and start spending an hour searching your apartment, right? Absolutely. The remedy is that they drop the criminal case and you can't be criminally prosecuted, but I believe this circuit has stated that one of the remedies is not an application for monetary damages under Section 1983. Thank you. Thank you. Mr. Senegada. Mr. Senegada, before you get into your rebuttal, can you just give me the counts that are still alive? I wrote down your response. You said the Fourth Amendment, malicious prosecution, false imprisonment was still alive. So that counts four and six, and then which other ones? The Monell count, Your Honor. I'm sorry? The Monell. What other count is that? I think that's three, but I'm not sure. Yes, three. So the only counts that are alive are three, four, and six? Yes, the claims we are seeking to pursue, and I don't want to be too drawn into the actual denomination of the count because I think some of them unfortunately were mislabeled, but the claims we are pursuing, and I'm representing this, are malicious prosecution, false imprisonment, unconstitutional search and seizure, and the Monell claim. And I can't tell me which counts. You want us to go figure it out. I don't want you to figure it out, Your Honor. I'm just saying that I gave an example. I believe it counts. Then help me. Help figure it out for me. I just want to make sure we know exactly what's live. I've got three, four, and six is live. What else? Three is live. Six is live. Sixteen, which is appendix page 279, is live, just as bringing in the New Jersey Civil Rights Act. That's the legal theory of relief for malicious prosecution, false imprisonment. That's the mechanism. Would you say it is a 1983 argument? Well, this is the New Jersey Civil Rights Act, but also if you look at the prior count, which is 13, this is the one I'm referring to, which I believe is mislabeled, but it gives fair notice, which is conspiracy to commit unlawful imprisonment. It sounds like false imprisonment to me, Your Honor. And we would pursue that as a 1983 claim. So you didn't say four. You said three, six, sixteen. What about four? An unlawful search under the New Jersey Constitution, yes, Your Honor. That would be pursued as a New Jersey Civil Rights Act claim. All right. Anything else besides those three? It was four, excuse me. Six we covered. No, Your Honor. Okay. Thank you. I appreciate it. Let me address the issue of constructive possession very briefly. The state court judge did not make any finding that the drugs were possessed by anyone in the apartment. Is this even relevant? It's really not, but I just want to be clear with that. Yeah. Is that a who cares? Assume it was his. That still wouldn't give the police the right to bust in and search unlawfully, obviously. That's true, but there are arguments on this appeal that certain claims cannot be pursued if it is proven that the defendant, in fact, possessed drugs. That is actually the holding of this court in heck of a want. So to some extent, it could be relevant down the line. I concede it's not relevant today, Your Honor. Back to the Monell issue and the issue of the consent decree, the press releases refer to a three-year investigation, and that's actually played in the complaint. And if you reasonably infer that Newark participated in the investigation, then Newark would have had, during the investigation, some notice that there was a problem with the police department. Well, the press release says a three-year investigation revealed a pattern or practice of constitutional violations. Right, Your Honor, but we know from the way that these DOJ investigations work that the investigation cannot occur unless either the police department voluntarily participates or under 42 U.S.C. 5601. How do we know that? We're talking about a pleading here, right? You can't direct this to, you know, stuff in the air. We've got to have something in the complaint. The press release refers to a complaint filed by the ACLU, which was the precipitator for the Attorney General's action under 12601B to find reasonable cause to investigate the Newark Police Department. And the ACLU complaint, though it's not in Mr. Roman's complaint, in the press release refers to a pattern of unconstitutional searches. So that should be sufficient at the pleading stage to infer that. Well, what it says is a three-year investigation by the Justice Department in New Jersey, U.S. Attorney's Office revealed a pattern or practice of constitutional violations in areas including stop-and-arrest practices, use of force, and theft by officers. So you're focusing on the stop-and-arrest practices, right? Yes, Your Honor, and I'm also focusing on, and this is appendix page 134, that the precipitator, as listed in the press release for the investigation, was a complaint filed by the ACLU, which lists the same problems. And you can infer that Newark, at some point prior to May 2, 2014, when the search of Mr. Roman's apartment occurred, that it had some notice that there was an investigation and there was a problem. I can see that we can't know from the pleadings what took place during the investigation, but it would be unreasonable to infer that Newark had no knowledge of the investigation and did not participate in any way. And at the pleading stage, that inference should be sufficient. We think this case should be remanded and a new complaint filed, an amended complaint, based on the claims that I represented to Justice Hardman, would be filed, and that it should be proceeded to be tested in the Riversdale process. Why would you get another chance to plead, even if we said, yeah, you know what, there's enough here to go forward? Having been given the chance to plead again, and having been told by the district court what the failings were in the first complaint, if we send it back, why would we send it back with an opportunity to plead yet again? The first part of my answer is that's exactly what happened in Roseveed-Bartle, and it's a very similar procedural posture to that case. It's not exactly what happened in Roseveed-Bartle. I mean, in Roseveed-Bartle, the footnote that our court dropped indicated that, well, maybe this was unclear. But in this case, the district court said, you just haven't pledged with specificity what's going on with these people. Why would we send it back after the district court identified the problem to a counsel party, and then we got back, or the judge in this case did. Again, no specificity as to individuals, for example. Number one, we would want to amend it, and we think it should be amended to clean it up. I know you want to. I'm trying to figure out why that would be fair to the other side and consistent with our own case law. If the case is remanded on the claims that I've represented that we want to pursue, regardless of whether the complaint is amended, the six named police officers would remain defendants. There would be no unlawful search claim if there were no defendant police officers. There would just be the Monell claim. So procedurally, whether we amend it or not, the claims would still be live. I'm not representing that I would add claims or change the claims. I'm saying that because you want to add detail. Yes, Your Honor. Certainly I would prefer, if given the chance, to add detail. When did you come into this case personally? Me personally? I came in at the motion for reconsideration stage, and then I took the appeal. I was not previously involved. Thank you very much. Thank you. Thank you to both counsel. And we'll take the matter under advisement.